Case number 15-7002. B.D., a minor, by and through his parents, and ex-friends, Anne and Brantley Davis, et al., appellants, Russia's District of Columbia. Ms. Sebit, for the appellants. Mr. Love, for the appellate. Good morning. May it please the Court. I am Diana Sebit, appearing on behalf of minor plaintiff B.D. and his parents, Anne and Brantley Davis. With the Court's permission, I will reserve three minutes for rebuttal. I am assisted by Alyssa Patzold, a staff attorney with the Children's Law Center, which is one of the amicus curia. We are asking this Court today to find, as seven other circuit courts have found, that there is a right to enforce an administrative win under the Individuals with Disabilities Education Act in federal court. We note that three courts have found that there is a direct right of enforcement under the Individuals with Disabilities Education Act, known as IDEA. Four courts have found that it is enforceable under 42 U.S.C. section 1983. Those are older cases than the three finding the direct right of action under the IDEA. And one circuit, the 10th Circuit, while not holding directly, has indicated in dicta and cited with approval the right of action, right? You're referring, Your Honor, to the 2006 Blackmun decision. The Blackmun decision, that is dicta, issued before the Court. That's what I said. Yes. So go ahead. I mean, you know, there's circuit splits on everything, so why don't you start with the language of the statute? Your case would be stronger if it said aggrieved party, but it says aggrieved by the findings and decisions. The specific language in that section says a party aggrieved by the findings and decisions. The three decisions, and most of them are correct, given this language. And also, the district pointed out in its brief that there's a statute of limitations for this, that you have to sue within 90 days? Yes. And their point, which you didn't respond to, at least I don't think you did in your reply brief, was that if Congress had intended a cause of action By the way, I think your argument about purpose is powerful. I get that, but we have this statutory language that we have to deal with here, and the school system points out that the 90-day statute of limitations is pretty powerful evidence that Congress did not have in mind a suit to enforce a successful administrative, a hearing officer decision. Because there's no indication that, I mean, there's no reason to expect that violations would occur within those 90 days, and you didn't respond to that in the reply brief. In fact, maybe you could help me with this. You didn't say much at all about this in the reply brief. You switched to the implied theory, so I take it by the way you began your argument, you're not conceding this point, but No, we're not conceding that. Essentially, there's a reason for having a 90-day limitation on an appeal. And what the cases say is it's very important when the student and or parents have lost their case that that matter be resolved quickly because the needs of a special needs child are at stake. When there is a win by the student and parents, compliance may or may not come quickly. In this case, for example, the district So is it your position then that the 90-day statute doesn't apply at all to a suit to enforce? The 90-day statute would not apply to a suit to enforce, the reason being that the compliance might or might not occur within that 90 days. In this case, for example, they were given 70 days to apply. The point that we made in the reply brief was that the statute says there's a right of appeal within 90 days for an aggrieved party, but it is silent about how one enforces in an administrative way. And the district's response on that was, well, go to the state enforcement procedure, state complaint procedure. And that is an ineffective remedy. Therefore, one looks at the canon line of authority where the statute is silent about enforcement. But is the statute silent? It says aggrieved by the decision. So why is that statutory silence? I mean, I would agree with you if it was silent, we could look at the fact that there's no other effective remedy, and we could look at your very powerful arguments about purpose. But I think you've got a problem with the clarity of this language, aggrieved by the decision. That is the language that gives the right to appeal an adverse decision. It does not say only an aggrieved party may appeal, and it just does not address... So we only have jurisdiction over causes of action awarded by statute. That is correct. Right? So you have to find an affirmative grant of a cause of action to be able to make this case. Well, that is right. Well, as I said, we believe that the three other circuits that have found that have analyzed it correctly. But for current purposes, we would also submit that because it does not bar an enforcement action and in fact does not speak to enforcement at all, the enforcement right is found only in the regulations, that the enforcement right must be read into the statute following the well-established precedent. So that's your argument that it's implied? Yes. Which I think is only made in your reply brief. Yes, it was in response to the district's argument that the statute does not address it. But then, you know, I mean, that still means the district, in terms of the adversarial process here, the district hasn't had an opportunity to respond to your argument that this is implied. Normally what you would do is in your blue brief, you would say, you know, we think the statute allows it, but if it doesn't, there's an implied cause of action. Right? Well, it was, we did make the argument in the opening brief that there was a general federal right of jurisdiction to hear this case. And the reply brief expanded on that in direct response to the district's. Let me ask you this about the statutory interpretation. Other than the other circuits, you know, we have, this circuit has lots of cases which say, you know, when the language of the statute is clear, we follow the language of the statute, even if it creates, you know, problems with respect to the purposes of the statute. Do you have a case that you can cite that would support your approach under this statute? What's your best case that you can think of? I would cite the score to the Supreme Court's recent decision in King v. Burwell, the Affordable Care Act case, where they said you look to the statute as a whole, you don't look to a specific section, you have to interpret the statute to give effect to its purposes. And that decision... Even in King, King viewed the phrase established by the state, it found that that was ambiguous after reading it along with other provisions of the statute. And here, the other provision of the statute, the statute of limitations, goes the other way. Smith v. Robinson, the Supreme Court case, which ultimately Congress overruled by amending the statute, did say that there is a judicial right to enforce a child's right to a free, appropriate public education. That was a general statement of that. But there is an overriding statutory grant of the right to a free, appropriate public education enforced through the procedures which the Davis's followed, taking this two-way due process case, winning that case for the most part, and then trying to enforce it. Could the Secretary of Education remedy this? The Department of Education? Could it cut off funds to a district that refuses to comply with the administrative judges? The United States Department of Education? Yes. They can, in theory. In fact, this is not in the record, but there have been multiple citations over the years by the Department of Education of the District of Columbia Public Schools for noncompliance. They have never actually cut off funds. To comply with decisions of administrative judges? For general noncompliance with the IDEA. Until this decision issued, I'm not aware of any issues that were not of noncompliance with decisions of hearing officers that were not enforced in federal court. Before Judge Friedman issued his 1999 order in the Blackman Jones case, these cases were filed as enforcement actions. After that, when there was a need for emergency relief, as the amicus point out, preliminary injunctions were filed in that case, and there were at least 100 grants of preliminary injunctions. So the Department of Education did not become involved in the enforcement because there was a procedure, and as I said, until the decision issued in this case, it had not really been an issue that these cases were enforceable. Go ahead. No, you go ahead. It's your turn. In the Porter case that you cite, the government, the Justice Department, filed an amicus brief, and it said that when there's failure to comply with a hearing officer decision, the right remedy is for the parties to then go back for another due process hearing. Because if they're not complying with the order, you're not getting the free appropriate public education, go have another hearing officer decision, and if the hearing officer doesn't or cannot enforce the terms needed to get the free appropriate public education, then you will be able to have your appeal. Why isn't that the right way to enforce these? In this case, there are understandings in the District of Columbia, the hearing officers do not enforce other hearing officer decisions, that they do not have jurisdiction to do so. And what we would be doing would be asking one hearing officer to interpret another hearing officer's decision and to enforce it. Right, and if that hearing officer says either no, I won't give you what you need for free appropriate public education, or I can't, then you're aggrieved by the findings of that hearing officer. Because if you don't have a decision that's being enforced, you don't have the education you're entitled to, and then you'll have a decision that isn't giving you what you need, and you'll be able to seek judicial review. That's the Justice Department's view of these regulations. It seems to, though, put the parents and the child on an endless loop of more and more hearings, particularly when there's no jurisdiction. I'm unfortunately running into my rebuttal time. That's okay, we have a few more questions. Go ahead. We'll give you one more time, don't worry. Okay, thank you. And then, I guess the other question I had is, what are you still now trying to enforce in this case? At this point, we are seeking compensatory education for BD for more than a year of not getting appropriate educational services, tracing back to... No, but that's not enforcing the hearing officer decision. That was your objection to, at least the one objection I thought you had to the hearing officer decision was that it gave too little. Is that correct? Am I incorrect? No, there were two separate requests for compensatory education below. The first was for the period from August of 2011 through the date of the hearing, where we said he did not give enough. The other would be, since the district did not comply with the hearing officer's decision by completing BD's educational program within the specified time, even after we grudgingly gave them an extension on that, he went without educational services for a substantial period of time, about a year. So, can I break this into two parts then? So, with respect to the hearing officer decision that you obtained, there's nothing left that you want to enforce. You still have an objection to the scope of compensatory services offered for that first window of time until you got the hearing officer decision, but there's nothing left that you need to enforce in that decision? No, because under the authority of the Boos case, the delayed compliance would give right to an entitlement to compensation. Right, that's separate, so that's compliant. That would be, well, we would be enforcing it in the sense of seeking a determination by the court that the district did not comply, and because with the passage of time, it's been overtaken by events. And was that failing to completely compensate the parents for the costs, for their costs? Is that what the district has failed to do? No. The district says this is all about $900 or something. No, that's not correct. That was one issue raised, and that is a mischaracterization. It's a minor issue. So, the district has reimbursed the parents? No, they have not. Oh. That money has never been paid, but we wouldn't be here over $900. Okay. But you still have a live, then, this is what I'm trying to find out, is whether you still have a live enforcement objection even as to the original hearing officer decision? They did not comply with the original hearing officer's determination. Eventually, an individualized education plan was proposed. A placement was proposed and then withdrawn, and we went to a second due process hearing, which is not part of this case. But for the period of time before all of those later events happened, BD received no educational services. Under the hearing officer's decision, he was to receive services until he had an appropriate educational plan, which was denied to him for approximately a year. And although with the passage of time, certain events have perhaps made actual enforcement a simple matter of a declaration, of a finding that they didn't comply, he would still be entitled to compensatory education for that. Wait, hang on. Couldn't the, just to follow up on what Judge Millett said, there is a second due process hearing. Yes. Couldn't, if the district had failed, let's assume you're right, that the district failed to provide the educational services directed by this hearing officer, wouldn't that then become a basis for more compensatory education in the second case? It could be, although on different grounds. Right, as compensatory education. Right. But it would be a bigger compensatory education award because the failure to provide a FAPE would be far more serious, right? Yes, it would. So that isn't Judge Millett right? The remedy here, given the clarity of the statute, is the second hearing officer's hearing. Not completely. There can certainly be an award of compensatory education in connection with the further disputes over the appropriateness of the ultimate proposal for DD. But that would not necessarily resolve the compliance with the first issue. But wouldn't the compensatory education component address that? I'm sorry? Wouldn't the compensatory education component, you're right, you're right, the FAPE question in the next hearing is different from the one here. But you would presumably, the parents are entitled to compensatory education under Reed in the other hearing also. And if in fact the district has failed to fulfill its obligations under this hearing officer's order, then presumably that would require a much larger compensatory education award in the next one. Yes, but in the second hearing... Do you see my point? Well, partially. Partially. In the second hearing, the hearing officer could certainly find that the district failed in its obligation to propose a free appropriate public education for DD as of March 2013. But could find that it had not failed prior to that. And so that would still leave us with a compliance issue up until that point. Okay. Let me ask you, employee, what you thought about that issue. I just wanted to go to one thing. You said certain things have changed and really maybe all you needed is a declaration that they didn't enforce. Do they owe you $900 still or not? No, they have not paid that sum of money. Okay. That remains... So things haven't changed enough. No, things have not changed on the reimbursement. I just don't want to overemphasize what's a relatively small amount of money. But what has happened since then, because it's now 2016 and we're talking about a decision that issued in 2012, is that DD has had additional IEP meetings, finally received an individualized education plan, which has gone to due process since then, and has had proposals for educational placements for him to attend. And those are being litigated in subsequent matters. So when we filed our motion for summary judgment, which postdated all of those activities, asked specifically for relief for the period through the date that the new due process hearing was requested, on the theory that after that, that was really within the province of the new due process hearing and the new hearing officer. What are you asking for in count one? In count one, we are asking for compensatory education to restore BD to the educational achievement he would have had, had they provided an appropriate education from August of 2011 through March of 2012. And the point there, as I understand it, is that five hours of occupational therapy wasn't enough, right? No. That was designed so... That's not your argument? That is. That is your argument, right? That wasn't enough. When I said no, I meant no was not enough. Sorry. And your view of what is enough to deal with that is what? We had actually submitted a compensatory education plan. The occupational therapy was designed for one purpose only, which was to remediate the egregious behaviors that had developed during the hiatus from education. He would need individualized instruction, highly specialized instruction. He would need other supportive services that everybody agrees he needs, behavioral support services, speech-language therapy, and so forth. And none of that was considered or ordered because the sole remedy was to remediate his behavior, which was necessary. We're not arguing that he didn't need that, but it didn't address the academic needs. It didn't address the other supportive services that he had not received for those six months. And so you're saying that's just something that someone has to think about if we agree with you, because it's hard to figure out what you're entitled to for those past failures so many years later, and you're saying that that should be thought about now because it affects not only what was going on during those several months but the ability of him to continue on later on. That is correct, that he had lost quite a bit of ground during that time. He continued to lose ground because he did not get those services designed to put him back where he could have been. That was the whole point that the Davises were seeking comprehensive and extensive evaluations, to figure that out. Let me ask you just quickly about your 1983 claim. DCPS says that that's forfeited because it wasn't raised until your reply brief, and also you didn't even plead a 1983 cause of action. What's your best argument that we can entertain that? I would suggest the Gene, I believe it's pronounced, versus Hathaway case, which says that if the underlying facts are pled and a claim for relief, the specific theory advanced is not required to be pled as long as the proper claim is placed before the court, the particular legal theory can be addressed. That is one case. Does your 1983 claim depend entirely on the inadequacy of other remedies? That is correct, you don't reach 1983. Did you plead that? No. So I don't understand why that case would apply. We did not plead it because it appeared based on the more recent authorities, including the two cases that had been decided at that point, the first and the ninth, that the better claim was a direct cause of action under the IDEA, and that in order to reach 1983, one would have to file it. Did you say there was a second reason that we could consider it? Under Singleton versus Wolfe, the Supreme Court case, it says that the court can reach in its discretion a clear legal issue that has not been passed upon before. And the important thing to do here is to do justice. This case is obviously about P.D. and his parents, but it is also about the children of the District of Columbia. Okay, great. Did you have anything? Yeah, I did. One other quick question, because you talked about in addition to the occupational therapy that you want on your count one, that you received for count one, that you wanted, he had to be evaluated and assessed, and then he really had to essentially determine what he needed to then get him. And I don't mean to confuse the two cases, but I'm just trying to find out what's still at issue in this case. Did the IEP that he obtained address those things, or is there still a gap on the compensatory education for that past period that you need to have remediated? It wasn't clear from your briefing to me. No, the IEP was prospective only. It did include a high level of service, but it included no provisions to address the gaps in his education. And the evaluations that were conducted did not address where he could have been as opposed to where he was, and every IEP that's been developed for him since does not address that. It just says going forward, this is what he's going to get. And the compensatory education plan that you say you submitted, that did spell out the additional things that you needed other than occupational therapy and other than the Maridel placement? Oh, yes, yes. And that's in the record, the compensatory education plan? Yes, it is in the record. It's all there. It's in the record on appeal. The occupational, excuse me, the compensatory plan that we submitted laid out in great detail the highly intensive services that he needed to remediate, noting in particular the long period of time that he had not received appropriate services and what it would take. Okay. Thank you. Thank you. Thank you. Mr. Love. Good morning. May it please the Court, Richard Love for the District of Columbia. As the Court has pointed out, the plain language here does limit judicial review to the parties that are aggrieved by the findings and decisions of the hearing officer, and adherence to that text will not disregard or clearly express contrary legislative intent, and it's imperative here. It does produce a ridiculous result. Excuse me? It does produce a ridiculous result, doesn't it? No. Which is that parents who win before an administrative judge are worse off than parents who lose. No, that's presuming that there's going to be disregard for the hearing officer's decisions. Well, but that's what this case is all about. Well, I think you need to look at the congressional intent here. But you have to. Your argument has to be, yes, it produces a ridiculous result, but that's what the statute requires, right? I mean, what's the explanation? Why would Congress have done it the way you think it did? I think that it likely reflects Congress's expectation that states would provide their own remedies for any failure to implement. For violations by their own officer? I mean, why would you think about it that way? Why would Congress say, okay, we're going to create a nationwide right to education for children with disabilities, right? It's a clear statutory right. And states that don't comply with their own administrative judge orders in due process areas, remedies for those, you've got to go to the state that's denying the remedy. I mean, you don't say that makes any sense. Well, public education is rooted in local control. So you might have a state agency as a super- This is a federal entitlement. It is a federal entitlement. Federal entitlements, I know of, provide for federal remedies. Well, I don't think it's- I mean, can you imagine, you know, Title VI, which prohibits discrimination by saying, okay, for state violations for that, you remedy in the state courts? I never heard of any. Nobody would think that that's a rational approach. Well, there's two issues here. One is idea is spending clause legislation. What's that got to do with this? Well, because state participations in idea has to be set forth unambiguously. And there's nothing in this statute that provides clear notices to state participants that it authorizes district courts to enforce favorable hearing officer decisions. The second is that there is- That goes to your argument that the statute's clear. I was asking you, what's the rationale for the result it produces? I think the rationale is, as I said, that the Congress likely did not want to embroil district courts in the numerous types of disputes that can, you know, be entailed under the rubric of enforcing a favorable hearing officer determination. So you think the language, grieved by the order, expresses- I haven't finished. Expresses congressional intent on exactly this issue? Did Congress actually thought of this? I think Congress intentionally did limit a remedy in district court to what it clearly says, and that is parties that are grieved by the findings and decisions of a hearing officer. I think that was intentional, and the question is, is it absurd to do that? And my suggestion is it's not absurd to do that because Congress likely expected that these hearing officers' decisions would be addressed by the states as required by federal regulations. Is there any legislative history on that at all? I'm just asking. Not that I'm aware of any. So we're just guessing about what Congress meant here. Yeah. Well, I think that's a reasonable inference that the Congress left it to the states to enforce in an area that's well-rooted in local control in spending clause legislation that requires a contrary scheme to be clearly- the enforceability of hearing officer decisions differently depending on- I understand your argument about the states. I get that. And I also understand the plaintiff's arguments about federal enforcement. What I don't understand is what's the rationale for Congress distinguishing between cases where the parents prevail before the hearing officer and cases where they don't? That's my question. Because our cases say we follow the plain language of the statute unless it produces an absurd result. Right? Right. Okay, so what's not absurd about that? Well, I don't think it's absurd when there is a local remedy to enforce hearing- You're not answering my question. My question is why is it not absurd to distinguish between decisions where the plaintiffs prevail and decisions where they don't? That's my only question. Well, because Congress could well have believed that the states would comply with hearing officers' decisions, that there is a great deal of emphasis placed on local remedies within IDEA's procedural requirements itself, and that in addition there was a state enforcement procedure that was required by federal regulation. I thought that state enforcement procedure was only prospective contempt, or essentially contempt. You have to go, come on, now really please go do it. Do they have any ability to remedy the harm caused by delayed enforcement under the state system? Yes, they do. Where is that? In the procedures, OSCE's procedures are in the appendix, and it clearly indicates that they can order compensatory education, they can order future additional services, and they can order monetary reimbursement. Are you suggesting now that in this case, so there's two things the parents are requesting. One is they say the district didn't comply with the specific orders of the officer. That, your position is, is they can't bring him here, right, because they want. But they're also appealing the administrative officer's failure to provide the compensatory education they believe the child needs. You're not arguing we don't have jurisdiction over that, are you? No. Oh, okay, fine. No, no. Right. So your answer to Judge Millett is not yes, but no, right? That is correct? I lost the thread of the question. So the question was my understanding of OSCE's authority was that if you filed a complaint with them, they could go, oh, fix this prospectively. But they could not actually enforce it. They would just issue, what would they issue? What would OSCE issue to DCPS or to itself? What would it do had they gone to them? Well, it is in itself. OSCE is the state educational agency, and DCPS is the local educational agency. What would this process have produced? Well, they could order that the DCPS provide the services that were identified in the hearing officer's decision. Going forward. Going forward. They also can order compensatory education to account for any delay. That's what's set forth in the procedures. It's in the appendix. So they could do both. Go ahead. Are you changing? So if the hearing officer, when it originally issued this decision, had said at the end of it, pretty please, DC. Otherwise, I confess that this thing is not worth the paper it's written on. We just have to hope DC will comply. Would they have been able to appeal that? Would they have been aggrieved by that finding? No. They wouldn't have been aggrieved by it? I mean, I think the language is clear. It says that you're a pre. I'm not sure I'm perceiving the distinction that the additional language you're suggesting. Right. The distinction is at the end of this decision it said, by the way, this isn't really worth the paper it's written on. All they can do is say, pretty please do this, DC. But if they don't, oh, well. Then surely they could have filed a district court action and been aggrieved by that hearing officer decision. I'm not sure what they would be. They're aggrieved by the fact that it's not worth the paper it's written on. That seems like an aggrievement to me. Again, I think there's a distinction between being aggrieved at the finding and decisions and being aggrieved by the local educational agency's failure to implement that. I'm collapsing the two. I'm putting them two into the order. If the order itself had acknowledged that we really can't enforce this, nothing you can do to enforce this other than asking them again and again and again pretty please, they'd be aggrieved. Okay. All right. And then if they're aggrieved by that, then if the practical consequences of your position are exactly that, why aren't they aggrieved by the order? The practicalities of my argument, the district agrees it has to comply with hearing officers' decisions, and it does. Blackman Jones was terminated because we not only complied at the percentage required by the district court, but the district court found that the system was sustainable and durable. So there's not disagreement here. That's still held to them in this case where their allegation is that you all didn't comply and you didn't do it in a timely manner. That's their allegation. Right. I'm talking as a systemic issue. And here, you know, the question really is where can hearing officers' decisions be enforced? We don't disagree that they can be enforced should the local educational agency not comply. But what we're suggesting is that here there is a local remedy. Here it's not absurd for Congress to have limited the right of action in district court to parties that are aggrieved by the findings and decisions of the hearing officers. And what is your reaction to the Justice Department position in the Porter case that the right remedy is to file a second due process hearing, and if it doesn't get enforced then they can go to court? Do you disagree? I think that's another possibility. But I think, you know, federal regulation requires this complaint review process. The district complies with that regulation, has a complaint review process. It is designed to be expedited and finalized within 60 days. It does have the power to correct for non-implementation issues. I think that would be a quicker and more effective route. And I think it is a reason why the scheme that Congress plainly set forth is not absurd. Look, we're way over time here. I just have a quick question about the part of the case that you do not object to in terms of our jurisdiction, and that is the parents' argument that the hearing officer did not provide adequate compensatory education. And their argument is, look, it can't be the five hours of occupational therapy. Occupational therapy deals with one aspect of this student's problem, but it doesn't deal with all the other aspects of it. They asked for tutoring, they asked for counseling, and the hearing officer rejected them. And you agree that that's properly enforced, right? Yes, I do. Okay, so why aren't they right about that? Okay. The administrative judge actually acknowledged Reed, acknowledged the Reed standard that the obligation of the district is to provide compensatory education sufficient to put the student in the position he would have been had the district not denied a fate. So he acknowledged that, and for his award, he awarded only one aspect. He awarded occupational therapy, which would deal only with a small part of this student's disability. Right. So what's the answer to that? The answer is that BD, I mean, the clear testimony here, and it was really undisputed, is that BD could not benefit from additional services until a diagnostic workup was completed. And so the hearing officer reasonably left the rest of BD's educational program to be developed after the variety of assessments that he ordered were completed. That's for the future relief. Well, Your Honor, it well could have involved compensatory education. He didn't say what you just said. He said he denied anything beyond occupational therapy because he said it wasn't supported by the record. He didn't say it was dependent on future assessments. He did exactly what BD and his parents asked for. If you look at the due process complaint, it's in the appendix on page 163. They asked the hearing officer to, and I'm quoting, order DCPS to consider when it develops BD's new IEP the comp services he may require to address the failure to provide a fate for him since August 2011. And that's what he did. He reasonably, given the complexity of this case, identified that the prerequisite here was to get an understanding of BD's triggers, of BD's complex problems, and to build an educational plan then. He didn't rule out compensatory being a part of that. The other thing, if I could just finish your sentence. That's it. Go ahead. You can start and finish it. Go ahead. They asked for residential placement, too, as part of counseling. He did. They asked for it. They did. And he ruled that he rejected it for three reasons. That it had no accessible educational component. Similar diagnostic evaluative services could be found in the district metropolitan area and completed in a setting other than a residential treatment center. And he found it was ill-advised for BD to be away from home and his mother for two to three months and would benefit from being accessed at home. I wanted to point out, with regard to compensatory education, he never ordered a residential treatment facility. In fact, he specifically rejected it. So, you know, a combat award for the alleged delay in identifying a residential treatment center, it seems inappropriate in the context of this case where the hearing officer didn't order it. If I'm going back to your argument that all he did, he just said, look, this all depends on future assessments, right? We don't know what beyond occupational therapy he could benefit from, right? That was your position? Well, everybody agreed he couldn't handle anything more than he ordered at that time. But didn't the hearing officer also order the parents reimbursed for the cost of tutoring? Yes, he did. Well, then if he couldn't benefit from tutoring, why did they do that? He limited the amount of tutoring to exactly what his tutor said he could handle, two hours a week. But if you were right, Mr. Love, that beyond occupational therapy, there was no way to know what this student could benefit from without further assessments, why would it have been appropriate to order the district to compensate the parents for tutoring? He must have thought that the tutoring was necessary for his education. Yes. And now the parents are saying tutoring is necessary, and there has to be compensatory education for the tutoring that he didn't get while he had no fit. And he limited it to two hours a week, consistent with the testimony of his tutor, that that's all that he could benefit from. So he tailored his award of compensatory services to what the testimony and the evidence indicated he could benefit from at that period of time. All right, great. Thank you. Thank you. Ms. Savage, we're out of time, but we'll give you two minutes, and I'd like you to start by responding to Mr. Love's argument that this argument that we're now talking about, that is that what the hearing officer did here was he ordered everything he could that he could without any further assessments, that everything else was dependent on further assessments. We did ask the hearing officer for further assessments to develop a future compensatory education plan because B.D.'s disabilities were so severe and his current availability was unknown, but he didn't do that. He simply ordered DCPS to develop a prospective educational program and did not order it to include compensatory education. And where do we – and in the record you say there's record evidence that the parents sought counseling and tutoring for Comp Ed, right? Is that your – No, we actually – not in the hearing request. The hearing request says specifically that a compensatory education plan needs to be developed down the road once we know where he is right now and where he wouldn't have been. Right, but Mr. Love said that's what you got. Oh, you say you didn't get that. No, we did not get that. That he did not order that at all. No, he ordered additional evaluations and then told the District of Columbia to develop an educational plan upon receipt of the assessments. He did not specifically order compensatory education as part of that plan, and in fact compensatory education therefore was never included in any plan that B.D. received. It was prospective only. It never addressed what his past deficits were. Is this what you're looking at? Are you looking at his order? He orders to reconvene the IEP team, right? Yes. To determine which assessments are necessary to determine the antecedents to the student's behavior, to develop a behavioral plan that would – Your point is this is all about a future IEP. That is correct. Not about compensatory education. And that is in fact how it played out. At future IEP meetings, and I believe at least one of the IEPs is in the record, there is no mention of compensatory services. I believe that – What would the compensatory services have been? That would have been more intensive services than what DCPS was prepared to provide for him. You mean like more tutoring and more counseling? Correct, correct. The IEP that was finally developed had him in a school, in a classroom that we contended was too large for him at that point. It didn't really address his deficits. It had him working at an academic level that he was not capable of working at and so forth. And a compensatory plan would have gotten him to that point. I see. Okay. We use up all your time with our questions. You can have one minute. Is there anything you want to say? Yes. In addition to the compensatory education? Yes. Let me just tick off what I have here. On the issue of the spending clause, I would simply say that the spending clause cases go to clear requirement of congressional notice of an obligation. And the obligation here is clear. It is to comply with the hearing officer's determination. The issue is the form in which it can be enforced. And I would distinguish those cases on that basis. Okay. As far as legislative history goes, I'm not aware of any legislative history one way or the other on enforcement, but I would note to the Court that Congress has amended the IDEA twice since the 1983 enforcement cases and once since the 9th Circuit cases that found a direct right of enforcement under IDEA, and they did not disturb any of those. They left the language as it was. There is precedent that Congress does not overrule judicial interpretations. Okay. We got those cases. Can I ask one quick record thing? Is it your compensatory education plan where I will find this request that you made to essentially have assessments done and then compensatory needs revisited? Where will I find that in the record? That is in the due process complaint. The due process complaint asks that the hearing officer send BD to Meridell to develop a comprehensive diagnostic and prospective plan to be used to develop a compensatory services plan, compensatory education plan. But he rejected Meridell. He rejected Meridell, but he agreed that educational evaluations were necessary. The point of Meridell was that was the only place we knew of that we thought could do the evaluations. It wasn't the be-all and end-all. Got it. Thank you. Case is submitted.
judges: Tatel, Millett, Edwards